UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────

CHRISTINE LOPEZ o/b/o Y.T.,

        Plaintiff,

   v.                                    18-CV-6704
                                                     DECISION & ORDER

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
───────────────────────────────────

On September 28, 2018, the plaintiff, Christine Lopez, brought this action under

the Social Security Act on behalf of the claimant, Y.T., a minor child under 18 years of

age.  She seeks review of the determination by the Commissioner of Social Security

("Commissioner") that Y.T. was not disabled.  Docket Item 1.  On May 31, 2019, Lopez

moved for judgment on the pleadings, Docket Item 12; on September 26, 2019, the

Commissioner responded and cross-moved for judgment on the pleadings, Docket Item

19; and on October 17, 2019, Lopez replied, Docket Item 21.

For the reasons stated below, this Court grants Lopez's motion in part and

denies the Commissioner's cross-motion.[1]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of

inquiry."  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first

───────────────────

[1]  This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

## I.    ALLEGATIONS

Lopez advances two arguments. She first argues that the ALJ erred in failing to consider Y.T.'s structured educational setting when evaluating his functional domains. Docket Item 12-1 at 20. And she also argues that the ALJ improperly evaluated the opinions[2] in the record, assigning "some weight" to all of them "without any reasonable

---

[2] These opinions include those of 1) Y.T.'s social worker, Megan Insalaco, LMSW (Licensed Master Social Worker); 2) Y.T.'s education specialist, Daniel J. DeMarle, Ph.D.; 3) a consultative examiner, Yu-Ying Lin, Ph.D.; and 4) the state agency medical consultant. Docket Item 9 at 21-23.

rationale." *Id.* at 24.  Based on both arguments, Lopez objects to the ALJ's findings of less-than-marked—as opposed to marked—limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. *Id.* at 24-29.

The Court agrees that the ALJ committed legal error in failing to consider the effect that a structured setting had on Y.T. and therefore remands the matter to the Commissioner.

## II.   ANALYSIS

When a claimant is in a structured educational setting, an ALJ must evaluate the effect of that setting on the claimant.  20 C.F.R. § 416.924a(b)(5)(iv)(C).  Because such a setting "may minimize signs and symptoms of [the claimant's] impairment(s)," the ALJ must "consider [the claimant's] need for a structured setting and the degree of limitation in functioning [the claimant has] or would have outside the structured setting."  *Id.* "Even if [the claimant is] able to function adequately in the structured or supportive setting, [the Commissioner] must consider how [the claimant] function[s] in other settings and whether [he or she] would continue to function at an adequate level without the structured or supportive setting."  *Id.*  For example, "if [the claimant's] symptoms or signs are controlled or reduced in a structured setting," the ALJ must "consider . . . the amount of help [the claimant needs] from [his or her] parents, teachers, or others to function as well as [he or she does]; adjustments [made] to structure [the claimant's]

environment; and how [the claimant] would function without the structured or supportive setting." 20 C.F.R. § 416.924a(b)(5)(iv)(E).

Here, Y.T. was in a structured setting—specifically, a 6:1:1 classroom (six students, one teacher, and one paraprofessional (*i.e.*, aide)).  Docket Item 9 at 175; *see also* 8 NYCRR § 200.6(h)(4)(ii)(a) (explaining that a 6:1:1 classroom is designed for students "whose management needs are determined to be highly intensive, and [who require] a high degree of individualized attention and intervention").  In addition, as part of his Individualized Education Plan, Y.T. received numerous accommodations, including individual and group psychological counselling services, refocusing and redirection, tasks broken down into smaller components, visual cues, prompts to prepare for transitions, opportunities for movement and breaks, modified homework assignments, and sensory strategies.  *Id.* at 174-76.  Indeed, Y.T.'s teacher noted that because "there [were] only three students in this class, [Y.T. got] all the extra help [he] need[ed]."  *Id.* at 198.

In his decision, the ALJ stated that he had evaluated Y.T. "as compared to other children the same age who do not have impairments" and considered "the type, extent, and frequency of help [Y.T.] need[ed] to function."  *Id.* at 19.  But there is no real consideration of "how [Y.T.] would function without the structured or supportive setting" in the ALJ's decision.  And for that reason, the ALJ erred in two ways.

First, and most basically, the ALJ simply states the standard definition for the various functional domains, recites a summary of Y.T.'s issues, and then concludes that Y.T. either has "less-than-marked" or no limitations in those domains.  There is no meaningful analysis at all.  In other words, the ALJ failed to construct "an accurate and

logical bridge" between his recitation of the facts and the conclusions he reached.  *See Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).  And that frustrates this Court's efforts to "assess the validity of the agency's ultimate findings and afford [Lopez] meaningful judicial review."  *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart,* 362 F.3d 995, 1002 (7th Cir. 2004)).

Second, as Lopez observes, "[a]lthough [the ALJ] acknowledged Y.T.'s placement in a [6]:1[:1] classroom[3] throughout the decision, he failed to take into account the highly structured setting provided for Y.T. when he determined [that] Y.T.'s impairments [did] not functionally equal a listed impairment."  Docket Item 12-1 at 20 (footnote added).

In assessing Y.T.'s ability to acquire and use information and to attend and complete tasks, for example, the ALJ acknowledged that Y.T. was in a structured setting and that his "teacher report[ed] serious concerns regarding academics and behavior."  Docket Item 9 at 24-25.  More specifically, the ALJ noted that "[t]he teacher stated that [Y.T.] is medicated inconsistently and when unmedicated, is disruptive. [Y.T.]'s teacher also indicated that [he] has occasional oppositional behavior."  *Id.*  But after paying lip service to the "serious concerns" regarding Y.T.'s "academi[c]s," as well as "disruptive" and "occasional oppositional behavior," *id.* at 24-25, the ALJ plainly ignored those problems in his analysis.  In other words, the ALJ failed to explain how he

---

[3]  The ALJ incorrectly described Y.T.'s structured education setting as a "5:1 classroom," rather than a "6:1:1 classroom."  *See* Docket Item 12 at 21 n.15.

reconciled Y.T.'s academic and behavioral problems with his conclusion that Y.T. had less-than-marked limitations in these two functional domains.

Moreover, although Y.T. had shown some improvement since being placed in his highly structured classroom, *see id.* at 199 ("[Y.T] has shown considerable growth in staying focused on lessons this year"), Y.T.'s teacher opined that Y.T.'s daily functioning would decline without the accommodations in that structured setting, *see id.* at 201. And there is no indication that the ALJ factored the effect of that structured environment into his evaluation.  For example, the ALJ did not address the numerous accommodations that Y.T. received in his special education classroom—including refocusing and redirection, tasks broken down into smaller components, visual cues, prompts to prepare for transitions, and opportunities for movement and breaks, *id.* at 174-76—let alone analyze how Y.T. would fare absent these supports.

Likewise, in evaluating Y.T.'s ability to interact and relate with others, the ALJ acknowledged that Y.T.'s "teacher indicated that [Y.T. had] difficulty relating to peers in crisis . . . [and showed] oppositional behavior occasionally" and that "[e]ducational notes indicate[d that Y.T. had] occasional problems getting along with his peers."  *Id.* at 26. But the ALJ did not explain how Y.T. had a less-than-marked limitation in this functional domain notwithstanding those interpersonal difficulties and occasional oppositional behaviors even in a structured setting with significant teacher support.  Nor did the ALJ assess how Y.T.'s ability to interact and relate with others would be affected by being in a typical classroom with many more children and only one teacher.

In sum, the ALJ made "no effort to determine whether [Y.T.] can 'function independently, appropriately, and effectively in an age-appropriate manner outside of

[his] highly structured setting.'" *See Bonet ex rel. T.B. v. Colvin*, 2015 WL 729707, at *6 (N.D.N.Y. Feb. 18, 2015) (quoting *Marine ex rel. Paez v. Comm'r, SSA,* 1996 WL 97172, at *8 (S.D.N.Y. Mar. 5, 1996)).  That was legal error.  *See id.* at *8  (finding legal error where "the ALJ failed to consider the effects of [the claimant's] highly structured school environment on his ability to attend and complete tasks, and made no effort to compare that environment to a non-structured one"); *Marine*, 1996 WL 97172, at *8 (explaining that "the ALJ must consider the effect that a structured or highly supportive setting, such as a 'special classroom' . . . , may have on children who 'spend much of their time in [these] settings'" (quoting 20 C.F.R. § 416.924c(d))).  Accordingly, the Court remands this case so that the ALJ can properly evaluate and explain the effect that a structured setting had on Y.T.—especially with respect to the domains of acquiring and

using information, attending and completing tasks, and interacting and relating with others.[4]

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 19, is DENIED, and Lopez's motion for judgment on the pleadings, Docket Item 12, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:        August 5, 2020
              Buffalo, New York


                                     */s/ Lawrence J. Vilardo*
                                     LAWRENCE J. VILARDO
                                     UNITED STATES DISTRICT JUDGE

---

[4]  The Court "will not reach the remaining issues raised by [Lopez] because they may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet*, 2015 WL 729707, at *7 ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").